DECISION
{¶ 1} Plaintiff-appellant/cross-appellee, Information Leasing Corporation ("ILC"), appeals the judgment of the Hamilton County Court of Common Pleas in a breach-of-contract action. In a cross-appeal, defendants-appellees/cross-appellants, USA Forms and Angel Cortes (collectively, "Cortes"), contest the trial court's dismissal of their counterclaims. For the following reasons, we affirm the judgment of the trial court in part, reverse it in part, and remand the cause for further proceedings.
 {¶ 2} ILC had engaged in the practice of buying automated teller machines ("ATMs") from a vendor, Credit Card Corporation ("CCC"), and then leasing the ATMs to small businesses located by CCC. In most cases, as well as in this case, CCC would promise the small business owners that it would service the ATMs and pay advertising revenues to the owners.
 {¶ 3} Here, Cortes had three cash-checking/tax-preparation businesses: two located in New Jersey and one located in Pennsylvania. In the fall of 2000, a representative of CCC approached Cortes about leasing ATMs to place in his businesses. On October 6, 2000, Cortes entered into three lease agreements with ILC pursuant to which he was to pay monthly fees of $269.24, $269.24 and $248.04 under leases numbered 258500000, 2620100000, and 2620200000, respectively. Each lease agreement was for a sixty-month period. Under a separate agreement, CCC agreed to service the ATMs and to pay Cortes a monthly commission fee.
 {¶ 4} Because CCC failed to service the ATMs and had stopped paying the commission fees, Cortes ceased making payments under the leases. In May 2001, ILC sued Cortes for breach of contract, seeking damages totaling $42,375.58 for past due rent, the balance of the rental payments, and incidental damages. Subsequently, ILC repossessed the ATMs and sold them at auction for $1,274 each. This reduced the amount of damages to $38,522.05.
 {¶ 5} Following a bench trial, the trial court awarded ILC damages in the amount of $5,886.96, representing unpaid rent from the inception of the leases to ninety days from the date that Cortes had notified ILC of his intention to cease making rental payments (the court did not indicate when this date was), late charges, and forfeited security deposits. The trial court also dismissed Cortes's counterclaims.
 {¶ 6} In a single assignment of error, ILC now maintains that the trial court erred when fashioning the damage award by failing to apply the damage provisions of R.C. Chapter 1310, which governs leases, and by using instead the formula adopted in Information Leasing Corp. v.Borda,[1] a Hamilton County Common Pleas Court case. We agree.
 {¶ 7} At the time that the trial court entered its judgment in this case, Borda, a case in which the trial court was asked to determine damages under a lease substantially similar to the leases in the case at bar, was pending on appeal in this court. We reversed in Borda,[2]
holding that the trial court had erred in awarding damages based upon rental payments due from the inception of the lease to ninety days after the notice of the intent to breach the lease, because that formula was not based upon any of the provisions in R.C. Chapter 1310.[3]
Accordingly, we hold in this case that the trial court erred by failing to fashion a damage award under R.C. Chapter 1310.
 {¶ 8} The parties both agree that R.C. 1310.74(A) governs ILC's damage award in this case. We share that view. R.C. 1310.74(A) is the damage provision used when the lessor elects to dispose of the goods by sale or otherwise. Here, ILC took possession of the ATMs sometime in the summer of 2001 and sold them at auction. Accordingly, ILC was entitled to the following damages under R.C. 1310.74(A): "(1) [a]ccrued and unpaid rent as of the date of default, if the lessee has never taken possession of the goods or, if the lessee has taken possession of the goods, as of the date the lessor repossesses the goods or an earlier date on which the lessee makes a tender of the goods to the lessor; (2) [t]he present value as of the date determined under division (A)(1) of this section of the total rent for the then remaining lease term of the original lease agreement minus the present value as of the same date of the market rent
at the place where the goods are located computed for the same lease term; [and] (3) [a]ny incidental damages allowed under section 1310.76 of the Revised Code, less expenses saved in consequence of the lessee's default." (Emphasis added.)
 {¶ 9} With respect to the second element of damages provided in R.C. 1310.74(A), ILC maintains that it could have used the proceeds from the sale of the ATMs as the "market rent" that had to be subtracted from the present value of the rent due under the remaining lease term. ILC relies upon our decision in Chambers to support its proposition. InChambers, in which this court was also asked to determine damages under a lease agreement similar to the leases here, we characterized the damage provision in R.C. 1310.74(A) as "unpaid rent and the present value of the future rent, less the value of the ATM, plus any incidental damages."[4]
(Emphasis added.)
 {¶ 10} We admit that this characterization of damages pursuant to R.C 1310.74(A) is misleading. At first glance, it appears to imply that the "residual value" of an ATM may be subtracted from the future rents over the remaining lease term. But when the statement is read in conjunction with the previous paragraph, which sets forth the elements of R.C. 1310.74(A) and explains, "Market-rent proof is recognized under R.C. 1310.53," it makes more sense to read "the value of the ATM" as the amount that may be secured if the ATM can be re-leased over the remaining lease term. R.C. 1310.53(A) supports this interpretation. That section provides that "damages based on market rent as provided in section 1310.65
or 1310.74 of the Revised Code are determined according to the rent for the use of the goods concerned for a lease term identical to the remaining lease term of the original lease agreement and prevailing at the times specified in those sections." (Emphasis added.)
 {¶ 11} Because the statute clearly sets forth that market rent, and not the residual value of the ATM, is to be subtracted from unpaid and future rents, we hold that the damages set forth in R.C. 1310.74 provide for unpaid rent and future rent, minus the market rate of rent for the remaining lease term, plus incidental damages. We hold that this was the meaning of our characterization of R.C. 1310.74(A) in Chambers.
Accordingly, on remand, the trial court may not replace the present value of the market rent with the proceeds from the sale of the ATMs when determining the damage award.
 {¶ 12} Because the trial court failed to apply R.C. 1310.74 in determining damages, a new hearing on the assessment of damages is required.[5] Cortes argues that a new hearing is not required because ILC had the burden to prove the elements of its claim, including damages, and that since ILC failed to submit evidence regarding the "market rent" for the remaining lease term, ILC has lost its opportunity to do so. But since the trial court failed to use the correct measure of damages, ILC never had the opportunity to address the proper elements of its damage claim. Therefore, we must remand this case with instructions that the trial court makes a determination in accordance with the correct measure of damages.
 {¶ 13} Accordingly, we sustain ILC's assignment of error.
 {¶ 14} In the cross-appeal, Cortes maintains, in a single assignment of error, that the trial court erred in dismissing the counterclaims. Cortes raises five issues for review in support of this assignment: (1) that the lease agreements were unconscionable; (2) that CCC and ILC were engaged in a joint venture; (3) that the leases should have been registered as investment contracts under federal and Ohio law; (4) that the transactions with ILC and CCC involved a business opportunity plan under R.C. Chapter 1334, and that ILC was required to make certain disclosures about the plan under R.C. 1334.02; and (5) that ILC should not have been awarded any damages. These same issues were argued by the lessee in Borda and were found to be without merit by this court.[6] Accordingly, we overrule Cortes's assignment of error on the authority of Borda.
 {¶ 15} In sum, we affirm the trial court's dismissal of Cortes's counterclaims, but we reverse that part of the trial court's judgment awarding damages to ILC and remand this cause with instructions for the trial court to determine damages consistent with this decision and the law.
Judgment affirmed in part and reversed in part, and cause remanded.
Sundermann, P.J., and Doan, J., concur.
[1] Information Leasing Corp. v. Borda (Apr. 1, 2003), Hamilton Cty. C.P. No. A-0103440.
[2] Information Leasing Corp. v. Borda, 1st Dist. Nos. C-020725 and C-020750, 2003-Ohio-4834.
[3] Id. at ¶¶ 6-11, citing Information Leasing Corp. v. Chambers,152 Ohio App.3d 715, 2003-Ohio-2670, 789 N.E.2d 1155.
[4] Chambers, supra, at ¶ 63.
[5] See Chambers, supra at ¶ 64.
[6] See Borda, supra.